## ZACHARIAH D. MARKS
### v.
## TIMOTHY LOOMER.

1. CONTRACT—BREACH—MEASURE OF DAMAGES.—The true measure of damages resulting from the breach of all contracts, where punitive damages are not allowed, is compensation; such damages as the party suffering must necessarily sustain, and he is not allowed to recover for those losses which he might with reasonable care and exertion prevent; and a party claiming damages, must show that he has sustained a loss, before he can recover.

2. SALE OF BLOODED STOCK—CONTRACT TO FURNISH PEDIGREE.— Appellant sold to appellee some fine cattle, agreeing to furnish a written certificate of pedigree. In an action to recover damages for a breach of the contract, in failing to furnish a certificate of pedigree as agreed, held, if the certificate was not furnished, and appellee had used due diligence to prevent loss, and actual damages had accrued, then such damages should be allowed; but if the cattle remained the cattle of appellee all the time, without any effort to sell them, or even desire to sell, it is difficult to see how any loss could have accrued on account of the want of the certificate, merely because the cattle would sell for more money with, than without the certificate, and the court erred in instructing that the measure of damages for a failure to deliver the certificate was the difference in value of the cattle, in the market with and without such certificate.

APPEAL from the Circuit Court of Carroll county; the Hon. JOHN V. EUSTACE, Judge, presiding. Opinion filed July 16, 1879.

Marks v. Loomer.

Mr. ALBERT R. McCoy, for appellant; that no recovery can be had, except for damages actually sustained, cited Armstrong v. Percy, 5 Wend. 535; Vedder v. Hildreth, 2 Wis. 427; Walker v. Ellis, 1 Sneed, 515; Olmstead v. Burke, 25 Ill. 86; 2 Kent's Com. 480; Sedgwick on Measure of Damages, 65; 2 Greenleaf on Ev. 210.

Messrs. HUNTER & FLETCHER, for appellee.

LACEY, J.   This suit was originally commenced before a justice of the peace, by appellee against appellant, and appealed to the Circuit Court, where it resulted in a verdict and judgment of $185 for appellee.   From this judgment appeal is taken to this court.

The substantial facts of the case are, that appellee and appellant met some time in the latter part of 1876, at Freeport. Appellee proposed to trade a thoroughbred heifer and calf. Appellant told appellee he would trade for a jenny and colt he had.   He thought he would allow $100 for jenny and $50 for colt—the heifer and calf to be $250.   He showed me what he said was the mother of the heifer, and told appellee that the Duke of Ogle was the sire of the heifer.

If it stood as he represented, and could give full pedigree of sire and calf, we would meet at Byron and trade.   We met Sept. 12, 1876, to exchange property.   Nothing further was said as to pedigree.

Appellee testifies:   We made the exchange, he allowing $100 for jenny and colt.   He said he had to send to Allen & Co., N. Y., to get the pedigree.   I paid the note.   Appellee wrote, and then in one year wrote two letters for pedigree—did not get it.   He claimed he would give me a pedigree, which was to be written out at some future time, to be delivered from records at Buffalo.

This was appellee's evidence.

The evidence tended to show that the difference between grades and thoroughbreds with pedigree was one-third.   The pedigree is two-thirds the value.

Mr. Puterbaugh testifies:   That animals are entered in the

herd-book from the certificate of the breeder. that it is the product of the herd-book dam and sire, the keeper of the herd-book taking the word of the breeder, and the breeder cannot give a full pedigree before the record is made. That the herd-book was the only authority, and if the breeder certifies to an untruth the herd-book is not a truthful record. This was the substance of appellee's testimony.

Appellant's testimony showed that the cattle in controversy were thoroughbred short-horn cattle. The sire and dam were herd-book animals—that the progeny was not recorded. "I promised him I would get pedigree copied from herd-book when I could." Vol. 17 is the last herd-book issued. At the time the sale took place, in '76, appellant had no written pedigree or copy from the herd-book. It was too late in the season to get the animals into Vol. 17.

On the 11th August, '78, appellant sent his money on to Allen & Bailey, and arranged the pedigree. Appellant cannot give pedigree from herd-book until the volume is issued. It is to appear in No. 18. It will not be out till May.

Peter Gratten testified that he heard Marks tell Loomer he would get a copy of the herd-book—that it was not yet in the herd-book. This was in substance all the evidence.

The suit was commenced Feb. 6, 1879.

The damages allowed in this case are excessive. It appears that the sale of the cattle was made in Sept. 1876, and if the appellee did agree as charged, to furnish a certificate of pedigree within a reasonable time to defendant, that is, get a copy of the pedigree from the herd-book in the hands of Allen and Bailey in Buffalo, and failed to do so, then some special damages should be shown commensurate with the large amount allowed in this case. By the recovery in this case, the appellant has to pay to appellee all of the purchase price of the cattle except $65, and yet the cattle are exactly as represented, thoroughbred cattle, and have been properly entered in the herd-book by appellant, which has been done since Aug. 1878, long before this suit was commenced.

All the appellee would have had to do, any time prior to the commencement of this suit and after the entry of the pedigree

of the cattle in the herd-book, would have been to send to the keepers of that record, and get a certificate at a trifling cost.

A party seeking redress for another's wrong, must use due diligence to prevent loss.  24 Ind. 103.  Sedgwick on Measure of Damages, side page 211, note 1.

If before the entry of the pedigree by appellant, of the cattle in question in the herd-book, it was out of the power of appellee to procure the pedigree, because the information was entirely in the power and control of appellant, he would have been entitled to recover any special damages resulting to him on account of the want of such proof of pedigree.

But in order to recover such damages, they would have to be proven; they could not be presumed.   It would not be enough to show that until the proof of pedigree was made, the cattle could not be sold in the market for as much as cattle with the proof of pedigree at hand.

The cattle having been thoroughbred short-horns, exactly as represented, they were intrinsically worth as much without, as with the proof of pedigree.   They have the same blood and the same qualities, and their progeny would be just as pure in blood and as valuable as though the proof of pedigree were at hand.   If appellee had held these cattle for sale, and had missed an opportunity to sell on account of the want of this proof of pedigree, and any special damages were shown to have occurred on account of the loss of such sale, and the proof of pedigree could not have been procured without the agency of appellant, and he had failed to furnish it according to contract, then such damages would have been a basis of recovery.   But if the proof of the pedigree could have been procured at a small comparative cost as well by appellee as appellant, then the appellee should have procured it, and the basis of recovery would be the cost of getting the proof.   The true measure of damages resulting from the breach of all contracts, and in fact for all losses where punitive damages are not allowed, is compensation.

Such damages as the party suffering must necessarily sustain, and he is not allowed to recover for those losses that he might with reasonable care and exertion prevent.   The damages claimed in this case, are not such as necessarily result from the

breach of the contract to furnish proof of pedigree, but are such as may result under special circumstances.

The contract to furnish the proof of the pedigree of the cattle, was not a warranty of any property or quality of the cattle. It was in the nature of a collateral undertaking. The contract to furnish the pedigree made at the time of the delivery of the cattle, was an executory contract, having for its consideration the price paid for the cattle, which was as well the consideration for the undertaking. The damages that would naturally and proximately result from this breach in not furnishing the certificate of pedigree, would have to be determined from the nature of the undertaking.

If the certificate were not furnished and appellee had used due diligence to prevent loss, and actual damages had accrued, then such damages should be recovered.

But if the cattle remained the cattle of appellee without any effort to sell, or even desire to sell, it is difficult to see how any loss could have accrued to him on account of the want of the certificate of pedigree, merely because the cattle would sell for more money with than without the certificate of pedigree. A party who claims damages must show that he has actually sustained loss before he can recover. Sedgwick on the Measure of Damages, side page 229, 3d paragraph.

The court therefore erred in instructing the jury for appellee that the measure of damages in the case was, " in case the pedigree was not delivered within a reasonable time, the difference of value of said stock in the market for such purposes, without such pedigree and of said stock with the pedigree; in other words, the value the stock would have been with said pedigree."

For the errors above pointed out the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.